*Court of Appeals, Third Circuit, Parish of St. Landry.*

## B. A. MARTEL, Dative Testamentary Executor, *v.* LEONARD J. SMITH *et als.*

1. Where, in a suit originally beyond the jurisdiction of this Court, plaintiff, by supplemental petition, without objection, changes the issues and the nature of the case, and in its new aspect the controversy is less than $1000, this Court will entertain an appeal therein.

2. Thus, where the holder of a twelve-months bond, secured by mortgage on certain property worth more than $1000, sues to annul a tax sale of the property, whereat one of the parties to said bond acquired title, and subsequently plaintiff, by supplemental petition, and without objection, demands simply the enforcement of his bond, which is for less than that sum, this Court has appellate jurisdiction.

3. Where the purchaser of property at a forced sale, upon twelve months' credit, executes his bond with mortgage upon the property; held, that it was the duty of such purchaser to keep down the taxes and prevent the sale thereof for taxes.

4. Having failed so to do, and the property being sold for such taxes and boughtin by one of the debtors on the bond, the tax title of such debtor cannot prevent the creditor holding the bond from enforcing it against the property.

*Appeal from Thirteenth Judicial District Court, Parish of St. Landry. Hudspeth, Judge.*

*Lewis & Brother* for plaintiff.
*J. N. Ogden* for defendant, appellant.

Defendant, L. J. Smith, purchased at sheriff's sale, upon twelve months credit, a certain plantation. He executed for balance of price, above costs, charges, etc., his bond at twelve months, according to law, for $704 40, with the other defendant, Elbert Gantt, as surety. Before the maturity of the bond, Smith allowed the property to be sold for taxes, and Gantt became the purchaser. The original petition set up fraud and collusion between defendants; that Gantt was the real purchaser at the first sale, Smith being merely a party interposed, and that the second sale was the result of a conspiracy to defraud plaintiff.

The prayer was for nullity of the tax sale to Gantt. Subsequently, by supplemental petition, filed with consent of defendants, plaintiff demanded the enforcement of his bond and mortgage upon the land. The defendants plead the general denial and set up the tax title as an extinguishment of the bond and mortgage.

IRION, J., after stating pleadings and facts.—If the issues in this case were confined to those presented in the

original petition, we would be compelled to dismiss the appeal for want of jurisdiction. The amended petition, filed without objection, presents a totally different issue. We are asked therein to recognize the validity of the special mortgage and vendor's privilege, reserved to secure payment of the bond and to enforce them against the property, for the purchase of which the bond was executed. The bond being for an amount less than $1000, is within the jurisdiction of this Court, and we clearly have the right to consider any question arising out of its enforcement against the property.

The question for us to determine, and which is the only one we can consider is, did the purchase by Gantt at the tax sale cancel the bond and the mortgage given to secure it?

The case of Renshaw v. Stafford, 30 La. An. 853, was similar in many respects to the one now before this Court. Renshaw was a mortgage creditor of L. A. Stafford, of whose estate Geo. W. Stafford was the executor. Taxes amounting to $4000 accumulated upon the property which belonged to the estate of L. A. Stafford, and the plantation was finally seized and sold by the collector for the payment. The property was sold in lots, some of which were adjudicated to Renshaw and some to G. W. Stafford, sufficient in the aggregate to cover the taxes. Stafford declined to comply with his bids, and the collector, upon that pretext, refused to make a deed to Renshaw. The property was again offered for sale and adjudicated to the State. It was then sold by the State to Mrs. Sarah C. Stafford, the widow of L. A. Stafford. In that case the Court said: "To our minds, Mrs. Stafford was the mere *alter ego* of Geo. W. Stafford in these transactions. Good conscience forbids that the executor and widow in community of the deceased, under the circumstances of this case, should be permitted to take advantage of their own wrong and thus deprive creditors of the estate of its effects. It was the duty of the executor, as also of the widow in community—they were under the same legal obligation—to keep down these taxes and to preserve the property for the creditors. The transaction can

only be regarded as a payment of the taxes; a redemption of the property for the benefit of the estate of L. A. Stafford."

A number of authorities are quoted by the Court, one of which is from Cooley on Taxation, pages 342, 346, who says: "Some persons, from their relation to the land, or to the tax, are precluded from becoming purchasers. So the mortgagor, remaining in possession of the land, owes it to the mortgagee to keep down the taxes, and the law would justly be chargeable with connivance at fraud and dishonesty, if a mortgagor might allow the taxes to become delinquent and then discharge them by a purchase which would, at the same time, cut off the mortgage. There is a general principle, applicable to such cases, that a purchase made by one whose duty it was to pay the taxes, shall operate as a payment only; he shall acquire no rights as against a third party by a neglect of duty which he owed such party. The principle is universal, and is so entirely reasonable as scarcely to need the support of authority. Show the existence of the duty, and the disqualification is made out in every instance."

If we apply these principles to the facts as shown in this case, it will not be difficult to arrive at a proper judgment. Gantt and Smith are both bound *in solido* upon the bond. Execution might have issued on the bond against Gantt alone, and any property he owned could be seized to satisfy the execution. There is nothing to prevent the plaintiff from seizing this very property, as the property of Gantt, or as the property of Smith, to satisfy the bond, provided the bond has not been extinguished by the tax sale to Gantt.

Under the circumstances of this case, we think there was a strong moral obligation resting upon Gantt to pay the taxes, if any were due upon this property. The evidence shows that it was Gantt who attended the sheriff's sale; that Smith was not present; that Gantt was the bidder, and that it was he who told the sheriff to make out the title to Smith. Several days after the sale, Gantt and Smith went together to the sheriff's office and signed the bond. It was Gantt who exe-

cuted a counter letter to Thoms for the redemption of the property, on payment of the bond; and it was Gantt who conducted all the negotiations with Thoms with regard to the redemption of the property. When the property was seized for taxes and Martel offered to pay them and stop the sale, it was Gantt who requested him not to do. so, because it would interfere with his arrangements with Thoms, and it was Gantt who then purchased the property.

Under all these circumstances we think it clear that Gantt, from his relation both to the land and the tax, is precluded from acquiring such a title at tax sale as can be opposed to the mortgage creditor who offered to pay the tax and stop the sale, but desisted at the request of Gantt, to enable him (Gantt) to arrange his affairs with Thoms, the former owner. It is immaterial, therefore, whether the land belongs to Gantt or Smith. They are both bound *in solido* upon the bond, and as Gantt cannot be considered as a third party making a *bona fide* purchase of the property, the bond remains valid and the plaintiff has the right to enforce his special mortgage against the property to satisfy his bond.

Judgment of District Court affirmed, in so far as it orders the enforcement of the bond, with its special mortgage and vendor's privilege against the property in question.